[Cite as *State v. Wallace*, 2024-Ohio-4886.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. C-220509 |
| | | C-220510 |
| Plaintiff-Appellee, | : | TRIAL NOS. B-1902817 |
| | | B-1906386 |
| vs. | : | |
| | | *O P I N I O N.* |
| JOEL WALLACE, | : | |
| Defendant-Appellant. | : | |

Criminal Appeals From: Hamilton County Court of Common Pleas

Judgments Appealed From Are:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal: October 9, 2024

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Ernest W. Lee, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Bryan R. Perkins*, for Defendant-Appellant.

**KINSLEY, Judge.**

{¶1} Defendant-appellant Joel Wallace appeals his convictions by a jury in the Hamilton County Court of Common Pleas in the case numbered B-1902817 for failing to give notice of an address change in violation of R.C. 2950.05 and in the case numbered B-1906386 for failing to register as a sex offender in violation of R.C. 2950.04, both felonies of the third degree. The record before us reveals that Wallace did not knowingly, voluntarily, and intelligently waive his right to counsel before proceeding to represent himself in these cases. We accordingly reverse Wallace's convictions and remand the matter to the trial court for further proceedings consistent with this opinion.

### *Factual and Procedural Background*

{¶2} Wallace is required to register as a sex offender. *See State v. Wallace*, 2020-Ohio-3959, ¶ 9 (1st. Dist.). On May 31, 2019, Wallace was indicted in the case numbered B-1902817 for failing to provide notice of an address change as part of his sex-offender registration. On October 31, 2019, Wallace was arraigned, and counsel was appointed to represent him. On November 4, 2019, Wallace was released on his own recognizance ("OR") with the condition that he wear an electronic-monitoring unit ("EMU").

{¶3} On November 14, 2019, the matter was set for a pretrial hearing. At the hearing, the State explained that Wallace would be indicted for a separate offense, because he had failed to complete his sex-offender registration upon his being released from the Hamilton County Justice Center ("Justice Center"). Both the State and defense counsel suggested that Wallace struggled with his mental health. Based on

these concerns, the trial court revoked Wallace's bond in the case numbered B-1902817 and ordered that he be held to undergo a mental health evaluation.

{¶4} On November 19, 2019, Wallace was indicted in the case numbered B-1906386 for violating his duty to register as a sex offender. A few days later, on November 26, 2019, Wallace's previous bond of OR plus EMU was reinstated, and Wallace was released from custody. He then filed the first of several motions in which he sought to represent himself against the pending indictments.

{¶5} On December 11, 2019, the trial court held a status report in both cases for the purpose of addressing Wallace's competency to stand trial. At this point, the court-ordered mental health evaluation had been completed, and the trial court asked if Wallace would stipulate to the competency report. Defense counsel not only declined to do so, but also highlighted that Wallace's motion to represent himself remained pending. The trial court later permitted Wallace's first attorney to withdraw and appointed new counsel.

{¶6} Months later, Wallace's second attorney withdrew, and a third one was appointed. Prior to the new appointment, Wallace filed another motion to represent himself. Ultimately the third attorney withdrew as well, and Wallace suggested that he would hire retained counsel.

{¶7} On May 17, 2021, the trial court scheduled a hearing to inquire about Wallace's representation. At that hearing, Wallace explained that he had not in fact hired an attorney and that he believed that the pending charges should be dismissed. The trial court urged him not to proceed without representation, explaining that it would be difficult for him to defend himself. But the trial court did not engage in a

3

colloquy to assess Wallace's understanding of the dangers of self-representation in a felony criminal case.

{¶8} On September 8, 2021, another hearing was held. At this hearing, the State asked the trial court to inquire into Wallace's position with respect to counsel. In response to the trial court's questions in this regard, Wallace requested access to standby counsel—meaning an attorney who would be available to represent him in the event he changed his mind about representing himself—and inquired whether accepting an appointed attorney would delay the proceedings. At no point in its dialogue with Wallace did the trial court probe his understanding of the right to counsel or whether he was knowingly giving it up. Instead the trial court denied Wallace's request for standby counsel and permitted him to move forward by representing himself.

{¶9} That same day, the matter proceeded to a competency hearing, at which the State presented evidence in support of its position that Wallace was competent to stand trial. Wallace represented himself at the hearing. Relying upon the evidence presented by the State, the trial court found Wallace to be competent.

{¶10} Later, on September 13, 2021, the matter came before the trial court on the issue of Wallace's bond. At that hearing, the State asked the trial court to again inquire about Wallace's status with obtaining or proceeding with counsel. When it did, Wallace explained that he would be interested in "advisory counsel" to assist him in representing himself. The trial court, however, did not inquire further into the status of Wallace's representation, nor did it entertain Wallace's request for an advisory attorney.

4

{¶11} On January 31, 2022, both of Wallace's cases were set for a jury trial. Jury trials had been temporarily suspended at the time, however, due to COVID-19, and the trial court continued the matter. The State once again asked the trial court to inquire about whether Wallace wanted an attorney to represent him. In response, the trial court urged Wallace to accept representation, but engaged in no further colloquy.

{¶12} On April 12, 2022, the trial court ordered a second mental health evaluation to assess Wallace's competency to stand trial. It committed Wallace to Summit Behavioral Healthcare on June 13, 2022, for the evaluation.

{¶13} On August 20, 2022, the trial court held a second competency hearing at which Wallace acted as his own counsel. The State called two doctors who testified that, although he had previously suffered a traumatic brain injury, Wallace was competent to stand trial. On the basis of this evidence, the trial court found Wallace to be competent.

{¶14} On September 26, 2022, the trial court held yet another hearing. Apparently confusing his current charges with a previous 2018 legal matter, Wallace repeatedly argued that the charges in the cases numbered B-1902817 and B-1906386 had already been dismissed.[1] Wallace also contended that he was not required to register as sex offender. After attempting to explain to Wallace why his arguments were not legally correct, the trial court continued the matter to the next day for a jury trial.

{¶15} On September 27, 2022, the trial court conducted a jury trial on both of Wallace's indictments. Before the trial began, the trial court granted a motion in limine filed by the State to exclude any mention of Wallace's 2018 case.

---

[1] Wallace was a party to a 2018 legal matter that has since been sealed and expunged.

{¶16}  The State called two witnesses at trial, Deputy Josh Taylor and Deputy Edward Schinkal, both of the Hamilton County Sheriff's Office ("Sheriff's Office"). Taylor testified to his role in the sex-offender notification and verification process on behalf of the Sheriff's Office.  According to Taylor, the Sheriff's Office is notified when a registered sex offender is released from the Hamilton County Justice Center.  That notification triggers the number of days within which the offender must report to the Sheriff's Office for address verification.

{¶17}  Taylor identified Wallace and testified that he began registering as a sex-offender in August 2010 following a conviction for rape.  He indicated that Wallace failed to register upon being released from the Justice Center, despite the fact that the Sheriff's Office sent a notification to Wallace by mail notifying him of the duty to register following his release.  Taylor further testified that an officer twice attempted to locate Wallace at the address on file but was unsuccessful.  As a result, the Sheriff's Office concluded that Wallace was not actually residing at the listed address of his current registration.

{¶18}  Schinkal testified that he was in charge of investigating potential sex-offender-registration violations for the Sheriff's Office.  Like Taylor, Schinkal identified Wallace in the courtroom.  According to Schinkal, the Sheriff's Office received an anonymous tip that Wallace was not living at the address on file with the Sheriff's Office and was therefore not abiding by the requirements of his registration. Following the tip, Schinkal confirmed that Wallace was in fact not living at the specified address.

{¶19}  Schinkal testified that he made several attempts to contact Wallace to give him a chance to comply with the registration requirement.  Schinkal also testified

that, in December 2019, during a conversation with Schinkal and Wallace's attorney, Wallace admitted that he was not living at the listed address. Schinkal also explained that when Wallace was released from the Justice Center, he was informed that he was required to register with the Sheriff's Office; however, Wallace failed to register after his release.

{¶20} Wallace also testified. His testimony was cut short by the trial court, however, because he began discussing the excluded 2018 case. What little the court did allow Wallace to say surrounded the fact that a 2018 case to which he was a party had been dismissed, sealed, and expunged. Therefore, he believed that he did not have to register.

{¶21} The jury found Wallace guilty of both charges. The trial court then sentenced Wallace to a term of three years of community control on each count, with the terms to run consecutively.

{¶22} Wallace now appeals.

### Analysis

{¶23} Wallace raises four assignments of error on appeal. First, Wallace argues that he did not knowingly, voluntarily, and intelligently waive his right to counsel prior to his competency hearing and jury trial. Second, Wallace argues that his speedy-trial rights were violated. Third, Wallace argues that there was insufficient evidence to support his convictions. Lastly, Wallace argues that his convictions are contrary to the manifest weight of the evidence.

### Waiver of Counsel

{¶24} In his first assignment of error, Wallace argues that he did not knowingly, intelligently, and voluntarily waive his right to counsel prior to his

7

competency hearing and jury trial. We review the propriety of a defendant's waiver of the right to counsel de novo. *State v. Jackson*, 2019-Ohio-2933, ¶ 5 (1st Dist.).

**{¶25}** A defendant's right to counsel during the critical stages of the prosecution is guaranteed by the Sixth Amendment to the United States Constitution and analogous provisions of the Ohio Constitution. *State v. Sherman*, 2023-Ohio-2142, ¶ 19 (1st Dist.). This includes the independent constitutional right to dispense with a lawyer's help when a defendant knowingly, intelligently, and voluntarily chooses to waive counsel. *Id.*

**{¶26}** In felony cases, Crim.R. 44 provides that a defendant must waive the right to counsel in open court and in writing. *See* Crim.R. 44(A) and (C); Crim.R. 2(C). Because a written waiver is not constitutionally required, a trial court must only substantially comply with the in-court standard in order for a defendant's waiver of counsel to be valid. *State v. Martin*, 103 Ohio St.3d 385, 392 (2004). The failure to execute a written waiver is therefore harmless error where the trial court engages in a sufficient colloquy to determine whether the defendant fully understands and intelligently relinquishes the right to counsel. *Id.*

**{¶27}** An appropriate Crim.R. 44 colloquy touches on both the nature of the charges against the defendant, as well as the role of defense counsel. *See id.* It includes "the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all the other facts essential to a broad understanding of the whole matter." *Id.*

**{¶28}** In addition to covering this basic information, the trial court must also inform the defendant of the disadvantages of self-representation and explain that the

8

defendant will be required to follow the same rules of procedure and evidence that normally govern the conduct of a trial. *State v. Ott*, 2017-Ohio-521, ¶ 5 (9th Dist.). In the process, a defendant, "should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975). "Whether a defendant's choice was made with eyes open typically depend[s], in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused." (Cleaned up.) *State v. Obermiller*, 2016-Ohio-1594, ¶ 30. The failure to advise a defendant of the nature of the charges, the allowable penalties, and what possible defenses and mitigation might be available is a factor in determining whether the defendant sufficiently waived the right to counsel. *Ott* at ¶ 6.

**{¶29}** Applying these standards to the proceedings below, Wallace asserts that he did not knowingly, voluntarily, and intelligently waive his right to counsel. More specifically, Wallace points to the absence of an inquiry by the trial court to determine whether he fully understood his right to counsel and to establish that he intelligently relinquished it. Wallace is correct, in that the record reveals the absence of a colloquy that substantially complies with Crim.R. 44.

**{¶30}** While Wallace first filed a motion to represent himself on December 2, 2019, the trial court did not engage in any inquiry with him to assess his understanding of the right to counsel until May 17, 2021. The trial court did permit Wallace's counsel to withdraw and appointed substitute counsel, but it did not address Wallace individually until the May 17, 2021 hearing, at which the following conversation took place:

**Court:** We are set for counsel today. Mr. Wallace, did you hire someone?

**Defendant:** No, I did not. I prefer to go pro se being that the details of this case no one seems to want to bring to light. The charges against me have been expunged, sealed and dismissed; and I have the paperwork to show and prove that the charges have been expunged, sealed, and dismissed. And I have been held unlawfully on Title 18 USC. My due process and constitutional rights are being violated at this time.

**Court:** Okay. Mr. Wallace, I was under the impression that you were going to hire someone or we would appoint someone. It's my understanding we did try to send someone to you and you wouldn't accept them. So at this time, what I am going to do is I am going to try one more time. I never recommend nor do I like anyone representing themselves in court because a lawyer who represents themselves has a fool for a client. That's how it works.

. . .

So what I am going to do is I am going to send you back. I am going to send someone to visit you, and we will see if that works out and we will try to get this resolved. It's just not that - - you should be able to get this resolved easily.

**{¶31}** The trial court again addressed Wallace on the subject of his representation at the September 8, 2021 hearing:

**Court:** Mr. Wallace, are you requesting counsel today?

**Defendant:** I would love to have advisory counsel, standby counsel - -

**Court:** Mr. Wallace, I have to make this clear to you. There's no such thing. Either you have someone represent you or you represent yourself. You don't have somebody that stands by. Once you start your case, you're the attorney on it. They can't advise you. They can't sit at the table with you. They can't do any of that. So you need to be aware of that. You do it or we appoint an attorney and you help that attorney. Okay?

**Defendant:** Okay

**Court:** I just want you to be clear, these are serious charges. And in most cases, these types of charges we're able to work out. I rarely have these kind of charges go to trial, although they could, which is the reason you have an attorney; to help you work out something, if at all possible. These are failures to register, correct?

**State:** Yes, Your Honor.

**Court:** Both of them. So your option is to request counsel of this Court, and if I give you counsel you're married to that counsel. They will walk you through this case and either take it to trial or help you work out a deal with the prosecutor; or, you know, if they're able to get the prosecutor to work the charges down they can do that too. But otherwise I have to do this competency hearing today to make sure that you're able to represent yourself if that's the route you choose.

**Defendant:** Okay. I understand what you're saying. If I did desire counsel would my other stuff start over? Because I've been held in here 27 days in lieu of bond, and that's a long time to hold somebody incarcerated or in detainment without giving bond. I don't want to stay

in here and keep this going. I want to see my mom. My dad is real ill. So this is what I would say. If this would continue out without starting - - without no delay I would accept counsel.

**Court:** I'll tell you what we can do. If you get counsel, your counsel can come and talk to the Court to try to convince this Court to reduce - - you're being held without bond right now because of an EMD violation. Correct?

. . .

**Court:** Mr. Wallace, what I would suggest, because we do have the Court Clinic person, I do need to go ahead and go forward in spite of - -

**State:** It depends, Your Honor, because counsel can stipulate - - we can go ahead and do it, but until he gets counsel he may want to reinvent the wheel and do it again. So we need to know the threshold question is does he want counsel or not; if he does, then we would set it for pretrial to see what that counsel wanted to do after reviewing everything.

**Court:** Instead whether they will just stipulate to it or whether they want to have the doctor come back?

**State:** Correct, but if he declines, we go ahead and proceed with this.

**Court:** And then we can probably discuss bond at that time.

**State:** Correct

**Court:** Okay, with new counsel. All right, Mr. Wallace, are you requesting counsel at this time, or would you prefer to go forward with the hearing?

**Defendant:** If I go forward with the hearing when can I go to trial? When is the soonest I can go to trial?

**Court:** A while, a while, . . .

. . .

**Defendant:** There's no plea agreement, no signed plea agreement between me and the State of Ohio, and that's the whole issue. Now if I accept an attorney will I get a bond?

**Court:** I don't know. I have to discuss that with the attorney. I don't know. This case has gotten so old there's a possibility, yes, but it's just been so long since we've had that discussion because you keep firing your attorneys. Every time you get one and we think we're going to trial you fire that attorney, and make it difficult to have anything happen.

**Defendant:** I can't get an ineffective assistance of counsel?

**Court:** No. You're getting amazing attorneys. I know who these people are. They're not bad attorneys. They're very, very good.

. . .

**Court:** Let's go forward. You just need to tell me Mr. Wallace - - I've got other people that have to be heard, and I've got people in the back waiting on me in a conference. So would you like to go forward - - would you like an attorney or would you like to go forward today with a competency hearing? And the reason that we have to go forward is because you don't have an attorney. You can't stipulate to your own competency.

**Defendant:** I say we go forward.

**{¶32}** The trial court also engaged with Wallace at the September 13, 2021 hearing about whether he wanted counsel:

**State:** Your Honor, I would ask you to inquire one more time, does he want counsel for this.

**Court:** Mr. Wallace, I'm still pushing counsel if you'll take it.

**Defendant:** I wouldn't mind advisory counsel, but everybody just is, how should I say it, not putting up the facts of the case.

**Court:** Right. All right, Mr. Wallace. Okay. He'll get a date for you, if you're released, then when you need to come back for a report.

**{¶33}** Even taken together, these colloquies did not substantially comply with Crim.R. 44. While the trial court did advise Wallace that representing himself was a fraught proposition, at no point did the trial court ask Wallace about his understanding of the charges he faced in both cases, the potential punishments involved, or possible defenses he may be able to raise. *See Martin*, 103 Ohio St.3d at 392. This information was critical to Wallace's understanding of his right to counsel, as it helped elucidate the risks he faced by moving forward without an attorney.

**{¶34}** Nor did the trial court assess Wallace's understanding of his right to an attorney, which was also germane to the voluntariness of his waiver. *Id.* To be sure, the trial court did discourage Wallace from representing himself, and the State, to its credit, kept the issue front and center at every hearing. But at no point did the trial court ask Wallace to acknowledge on the record that he was entitled to an attorney, nor did the trial court probe Wallace's understanding of the possible defenses and mitigation an attorney might raise on his behalf.

14

**{¶35}** We note that the need for a Crim.R. 44-compliant colloquy was heightened in this case, given the repeated questions about Wallace's competency. *See Obermiller*, 2016-Ohio-1594, at ¶ 30 (requiring consideration of the defendant's background and conduct in assessing the voluntariness of a waiver of the right to counsel). We find it unusual that Wallace was permitted to represent himself at a hearing to challenge his competency to stand trial absent a more detailed inquiry into his understanding of the role of counsel. We also note that Wallace raised repeated questions about the overlap between the two indictments at issue here and an unrelated 2018 case that legal counsel may have addressed. A more searching colloquy about the role of counsel and Wallace's right to representation would undoubtedly have benefitted Wallace's understanding in this regard.

**{¶36}** Moreover, the record also contains no actual waiver of the right to counsel. While Wallace did file various motions seeking to represent himself, he at no time indicated that he wanted to dispense with his constitutional right to an attorney in a clear and straightforward way. In fact, at various points throughout his conversations with the trial court, he asked for assistance from attorneys, either in a standby or advisory capacity or in a way that would not delay his trial.

**{¶37}** Thus, the trial court failed to substantially comply with the requirements of Crim.R. 44 in allowing Wallace to proceed without counsel. The trial court failed to explain the nature of the charges Wallace faced, the range of possible punishments, and the defenses or mitigation that an attorney could raise on Wallace's behalf. The trial court also failed to secure an actual waiver of the right to counsel, instead permitting Wallace to represent himself after he in essence requested the assistance of an attorney.

{¶38} We therefore sustain Wallace's first assignment of error, reverse Wallace's convictions on this basis, and remand the matter for further proceedings.

### *Speedy Trial*

{¶39} In his second assignment of error, Wallace argues that his right to receive a speedy trial was violated. Because this assignment of error would result in discharge if granted, we consider it for the purpose of determining the appropriate remedy in this appeal.

{¶40} We review alleged speedy-trial errors under a blended standard of review. We defer to the trial court's factual findings if they are supported by competent, credible evidence. *State v. Cheatham*, 2021-Ohio-2495, ¶ 10 (1st Dist.). We review legal questions in the context of speedy-trial questions de novo. *Id.*

{¶41} The origins of the right to a speedy trial are constitutional. *State v. Long*, 163 Ohio St.3d 179, ¶ 13 (2020). Ohio has additionally codified the right to a speedy trial in R.C. 2945.71. The statute requires that persons charged with felonies be brought to trial within 270 days. *See* R.C. 2945.71(C)(2). Each day that a defendant is held in jail in lieu of bond is counted as three days. *See Cheatham* at ¶ 11, citing R.C. 2945.71(E). As a result, a defendant who is held pending felony charges must be brought to trial within 90 days.

{¶42} R.C. 2945.72 sets forth a number of tolling events that extend the time in which a defendant must be brought to trial. These include the time during which a defendant's competency to stand trial is being assessed, any period of delay necessitated by the accused's lack of counsel, and any continuance granted by motion of the accused. *See* R.C. 2945.72(B), (C) and (H); *see also State v. Martin*, 2019-Ohio-

2010, ¶ 15. The time during which jury trials were suspended due to COVID-19 also tolls statutory speedy-trial time. *See State v. Tuttle*, 2022-Ohio-303, ¶ 31 (8th Dist.). In addition, a defendant may expressly waive speedy-trial time in writing. *State v. Ramey*, 2012-Ohio-2904, ¶ 18.

**{¶43}** Here, the record indicates that time was extended to assess Wallace's competency twice, and that a number of continuances were granted because Wallace requested to represent himself rather than to be represented by the series of appointed attorneys who worked on his case. Time was also tolled due to COVID delays. In addition, Wallace expressly waived the speedy-trial timelines by seeking continuances to obtain counsel and by signing written waivers of the right to a speedy trial. Wallace was also not detained for the entirety of the pretrial period, and only those days he spent in jail count towards the three-for-one calculation under R.C. 2945.71(E).

**{¶44}** Because the record shows that either Wallace or COVID caused the delays in the proceedings about which he now complains and that Wallace expressly waived his right to a speedy trial in writing on numerous occasions, we overrule his second assignment of error.

### *Sufficiency of the Evidence*

**{¶45}** In his third assignment of error, Wallace argues that his convictions are not supported by sufficient evidence. We consider this assignment of error for the purpose of determining the correct remedy in Wallace's appeal.

**{¶46}** To determine whether a conviction is supported by sufficient evidence, we inquire "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574

(1991), paragraph two of the syllabus. *See State v. Curry*, 2020-Ohio-1230, ¶ 11 (1st Dist.).

### A. The Case Numbered B-1902817: Notice of Change of Address

**{¶47}** Pursuant to R.C. 2950.05(A), an offender is required to provide written notice of an address change to the sheriff of the county of residence at least 20 days prior to changing the address. Failure to provide this required notice is a violation of R.C. 2950.05(F).

**{¶48}** "Change in address includes any circumstance in which the old address for the sexual offender is no longer valid, regardless of whether the offender has a new address. In other words, an address changes when one no longer lives at the address given to the sheriff of the county in which the offender resides." (Cleaned up.) *State v. Overton*, 2024-Ohio-1425, ¶ 23 (5th Dist.).

**{¶49}** The State presented sufficient evidence at trial that Wallace committed this offense. Schinkal testified that he could not locate Wallace at the address he provided to the Sheriff's Office and that Wallace had not changed his address despite being notified to do so. Schinkal also testified that Wallace admitted in front of his attorney that he was no longer living at the provided address.

**{¶50}** Wallace argues that an unresolved motion to suppress challenged the admissibility of his statement and that we therefore should not consider it.[2] There are several problems with Wallace's position. For one, the motion Wallace references is a one-page, handwritten document that fails to specify the evidence he seeks to suppress. Because he did not preserve any arguments specific to his statement, he has

---

[2] Wallace is correct that the trial court never ruled on his motion to suppress. A motion not resolved by the trial court is presumed to be denied. *State ex rel. Scott v. Streetsboro*, 2016-Ohio-3308, ¶ 14.

waived the ability to challenge it now. *State v. Self*, 56 Ohio St.3d 73, 81 (1990). And even if Wallace preserved the issue below, he has presented no substantive legal arguments as to the basis of suppression that would enable us to exclude the statement. To this end, he did not present an assignment of error arguing that the introduction of his statement violated his Fifth Amendment right against self-incrimination, so the issue also is not properly before us. *See* App.R. 11(A).

**{¶51}** But even if we agreed with Wallace that his statement should not have been admitted, we consider all the evidence, including improperly admitted evidence, in determining whether a defendant's conviction is supported by sufficient evidence. *See State v. Kareski*, 2013-Ohio-4008, ¶ 24. Wallace's statement to Schinkal therefore supports his conviction for failure to notify the sheriff of a change of address, regardless of whether it was correcty admitted at trial.

**{¶52}** Wallace further challenges the evidence establishing his identity. He contends that there was no evidence identifying him as the same Joel Wallace who was ordered to register as a sex offender. However, both deputies identified him in the courtroom. The State also submitted an exhibit entitled "Hamilton County Sheriff's Office, Cincinnati, Ohio Bureau of Identification Folder Information Sheet," which bears a clear picture of Wallace. Wallace's identity was therefore established by sufficient evidence.

**{¶53}** As a result, after considering the evidence in the light most favorable to the State, we conclude that the State provided sufficient evidence to prove that Wallace failed to notify the sheriff of an address change. We therefore overrule Wallace's third assignment of error as to the case numbered B-1902817.

### B.  The Case Numbered B-1906386:  Duty to Register

**{¶54}**  R.C. 2950.04 governs the duty to register for convicted sex offenders. An incarcerated offender must register upon release into the community.  *See State v. Wright*, 2023-Ohio-2134, ¶ 42 (10th Dist.).

**{¶55}**  In *Wallace*, 2020-Ohio-3959, we explained the applicability and scope of Wallace's duty to register as a sexual predator.  This classification imposes a lifetime duty to register every 90 days on sex offenders in Wallace's registration category.  *State v. Doyle*, 2010-Ohio-3339, ¶ 3 (2d Dist.).  The evidence presented at trial demonstrated that Wallace's 90-day registration period occurred while he was being held in the Justice Center in the case numbered B-1902817.  As a result, he was required to register upon his release from the Justice Center.  *See* R.C. 2950.07 and 2950.04(A)(2).

**{¶56}**  Schinkal testified that the Sheriff's Office was notified that Wallace, a registered sex offender, had been released from the Justice Center.  Schinkal explained that Wallace also received a form detailing his registration requirements at the time of his release.  Schinkal testified that, despite the Sheriff's Office's numerous attempts to locate Wallace after he was released, Wallace failed to register as required by law.

**{¶57}**  Given Schinkal's testimony, we hold that the evidence was sufficient to convict Wallace of a violation of his duty to register.  We accordingly overrule Wallace's third assignment of error as to the case numbered B-1906386.

**{¶58}**  In light of our dispositions of Wallace's first three assignments of error, Wallace's challenge to the manifest weight of the evidence is moot, and we decline to address it.

### *Conclusion*

{¶59} The trial court failed to substantially comply with Crim.R. 44, and Wallace's waiver of his right to counsel is therefore invalid. As a result, Wallace's first assignment of error is sustained, his convictions are reversed, and this cause is remanded for further proceedings consistent with this opinion. We overrule Wallace's second and third assignments of error regarding a speedy trial and the sufficiency of the evidence respectively. We decline to address Wallace's manifest-weight challenge as moot.

Judgment reversed and cause remanded.

ZAYAS, P.J., and CROUSE, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.