[Cite as *State v. Hoskins*, 2026-Ohio-100.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240634 |
| | | TRIAL NO. B-2402112 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *JUDGMENT ENTRY* |
| CARLOS HOSKINS, | : | |
| Defendant-Appellant. | : | |

This cause was heard upon the appeal, the record, and the briefs.

For the reasons set forth in the Opinion filed this date, the judgment of the trial court is reversed in part and appellant is discharged in part, and the cause is remanded.

Further, the court holds that there were reasonable grounds for this appeal, allows no penalty, and orders that costs be taxed under App.R. 24.

The court further orders that (1) a copy of this Judgment with a copy of the Opinion attached constitutes the mandate, and (2) the mandate be sent to the trial court for execution under App.R. 27.

**To the clerk:**
**Enter upon the journal of the court on 1/14/2026 per order of the court.**

**By:**_____
　　　　**Administrative Judge**

[Cite as *State v. Hoskins*, 2026-Ohio-100.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


STATE OF OHIO,                   :        APPEAL NO.    C-240634
                                          TRIAL NO.     B-2402112
    Plaintiff-Appellee,      :

  vs.                          :
                                          *O P I N I O N*
CARLOS HOSKINS,                  :

    Defendant-Appellant.     :


Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is:     Reversed and Remanded in Part, and Appellant
                               Discharged in Part

Date of Judgment Entry on Appeal: January 14, 2026


*Connie Pillich*, Hamilton County Prosecuting Attorney, and *John D. Hill, Jr.*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Roger W. Kirk,* for Defendant-Appellant.

**NESTOR, Judge.**

{¶1} Defendant-appellant Carlos Hoskins appeals his convictions for carrying concealed weapons, having weapons under disability, and unlawful possession of a dangerous ordnance.

{¶2} Hoskins asserts the trial court failed to conduct a sufficient inquiry to ensure he intelligently, knowingly, and voluntarily waived his right to counsel. He also contends that the State presented insufficient evidence to support his conviction for carrying concealed weapons, that the guilty verdicts were against the manifest weight of the evidence, and that the trial court failed to merge allied offenses of similar import when sentencing him.

{¶3} Upon review, we conclude that the trial court did not ensure that Hoskins properly waived his right to counsel. We further hold that the State failed to present sufficient evidence to sustain the conviction for carrying concealed weapons. Because our resolution of the waiver-of-counsel issue requires reversal and remand, Hoskins's remaining assignments of error are moot.

{¶4} Accordingly, we reverse Hoskins's conviction for carrying concealed weapons and discharge him from further prosecution on that count. The remaining convictions are reversed, and the cause is remanded for further proceedings consistent with this opinion.

## I. Factual and Procedural History

{¶5} In May 2024, Hoskins was pulled over by a Hamilton County deputy sheriff for operating a vehicle without a visible license plate. The traffic stop was captured on the deputy's body-worn camera.

{¶6} After informing Hoskins of the reason for the stop, the officer asked Hoskins for his driver's license and proof of insurance. Hoskins could not provide

either. He asserted that operating a vehicle without a license plate was not unlawful, and that he did not need a driver's license. He also maintained that there was no injured party, that he was "traveling" rather than driving, and that no crime had occurred.[1]

{¶7} After more than a dozen requests from the officer, Hoskins exited the vehicle. However, he began to walk away. The officer drew his taser as two additional officers arrived to assist in placing Hoskins in handcuffs.

{¶8} The deputy sheriff then asked Hoskins if he possessed any weapons. Hoskins answered in the affirmative. After searching him, officers discovered a semiautomatic handgun. The handgun was equipped with a "glock switch," a device that enables fully automatic fire.

{¶9} Hoskins was arrested and charged with carrying concealed weapons under R.C. 2923.12(A)(2), having weapons under disability under R.C. 2923.13(A)(2), and unlawful possession of a dangerous ordnance under R.C. 2923.17.

{¶10} At a pretrial hearing, the judge asked Hoskins if he wanted a court-appointed attorney. Hoskins did not answer the question. Instead, he repeated a statement challenging the court's jurisdiction. This pattern continued at trial, where the court again sought a clear yes-or-no response regarding counsel. Hoskins refused to answer, reiterating his jurisdictional objections.

{¶11} The trial court did briefly advise Hoskins that having an attorney was his right, and cautioned that waiving that right was unwise. However, the court provided no more than a minimal explanation as to the consequences and procedure

---

[1] These beliefs are consistent with those of the sovereign citizen movement. Adherents of this movement contend that the United States government is illegitimate and that they are not subject to federal or state jurisdiction, including motor vehicle licensing and registration requirements. *See* Bryan, *Sovereign Citizens: A Response in Absence of Direction*, 17 Charleston L.Rev. 247, 250-251 (2022).

of self-representation.

{¶12} Because Hoskins repeatedly refused to give a direct answer, the court construed his conduct as a waiver of counsel and proceeded without appointing an attorney. Hoskins represented himself at trial, focusing primarily on challenges to the court's jurisdiction.

{¶13} The jury returned guilty verdicts on all charges. The court imposed maximum and consecutive sentences on all counts, for an aggregate sentence of 78 months.

## II. Analysis

{¶14} On appeal, Hoskins asserts four assignments of error. First, he argues that the trial court failed to ensure that he knowingly, intelligently, and voluntarily waived his right to counsel. Second, he contends that the evidence was insufficient to support his conviction for carrying concealed weapons. Third, Hoskins asserts that his convictions were against the manifest weight of the evidence. Fourth and finally, Hoskins argues that the trial court erred by failing to merge allied offenses of similar import when sentencing him.

### A. First Assignment of Error

{¶15} In his first assignment of error, Hoskins argues that the trial court failed to ensure that he knowingly, intelligently, and voluntarily waived his right to counsel. Notably, the State concedes this point, and acknowledges that the trial court failed to conduct the inquiry required by Crim.R. 44.

{¶16} We review the propriety of a defendant's waiver of the right to counsel de novo. *State v. Nelson*, 2016-Ohio-8064, ¶ 17 (1st Dist.). Under Crim.R. 44(A), when a defendant is charged with a serious offense and is unable to obtain counsel, the court must appoint counsel unless the defendant, after being fully advised of the

right to appointed counsel, knowingly, intelligently, and voluntarily waives that right.

**{¶17}** "A criminal defendant's right to counsel during critical stages of the proceedings is guaranteed by the Sixth Amendment to the United States Constitution and Article I, Section 10, of the Ohio Constitution." *State v. Sherman,* 2023-Ohio-2142, ¶ 19 (1st Dist.), citing *Gideon v. Wainwright,* 372 U.S. 335, 343 (1963). This includes the independent constitutional right to forgo the assistance of counsel when a defendant knowingly, intelligently, and voluntarily chooses to waive counsel. *Id.,* citing *State v. Furr,* 2018-Ohio-2205, ¶ 6 (1st Dist.).

**{¶18}** Crim.R. 44(C) further provides that any waiver of counsel must occur in open court, be recorded, and, in serious offense cases, be made in writing. *State v. Martin,* 2004-Ohio-5471, ¶ 38. While literal compliance with the written waiver requirement is preferred, it is not constitutionally mandated. *Id.*

**{¶19}** "A court substantially complies with Crim.R. 44 when it makes a sufficient inquiry to determine whether the defendant fully understands and intelligently relinquishes the right to counsel." *State v. Walker*, 2025-Ohio-975, ¶ 35 (1st Dist.), citing *State v. Khamsi,* 2020-Ohio-1472, ¶ 40 (1st Dist.), citing *Martin* at ¶ 39. An appropriate Crim.R. 44 colloquy addresses the nature of the charges, the statutory offenses included within them, the potential range of punishments, possible defenses and mitigating circumstances, the role of defense counsel, and any other essential facts that provide a comprehensive understanding of the case. *Walker* at ¶ 35, citing *State v. Wallace,* 2024-Ohio-4886, ¶ 27-28 (1st Dist.), citing *Martin* at ¶ 40.

**{¶20}** Additionally, part of the inquiry includes determining whether "the defendant was advised of the dangers and disadvantages of self-representation." *State v. Ott,* 2017-Ohio-521, ¶ 5 (9th Dist.), quoting *State v. Hunter,* 2012-Ohio-1121, ¶ 14 (9th Dist.). The court must also explain that "the defendant will be required to follow

the same rules of procedure and evidence that normally govern the conduct of a trial." *Walker* at ¶ 36, citing *Ott* at ¶ 5.

**{¶21}** "Overall, whether a defendant has intelligently waived his or her right to counsel is based upon 'the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.'" (Emphasis deleted.) *Wallace* at ¶ 37, quoting *State v. Obermiller,* 2016-Ohio-1594, ¶ 30.

**{¶22}** In this case, the trial court failed to substantially comply with the requirements of Crim.R. 44 in determining whether Hoskins knowingly, intelligently, and voluntarily waived his right to counsel. Although the court asked Hoskins multiple times whether he wanted an attorney and briefly advised him that proceeding without one was unwise, it did not conduct the constitutionally required colloquy to ensure a valid waiver.

**{¶23}** The court omitted any explanation of the charges, potential penalties, or the risks and disadvantages of self-representation. The court also failed to advise Hoskins that he would be held to the same procedural and evidentiary standards as a licensed attorney. Instead, the court pressed for a yes-or-no response and offered only a cursory reference to the right to counsel, falling short of the inquiry required by Crim.R. 44.

**{¶24}** This issue is indeed complicated by the nature of Hoskins's behavior. It does not seem he had any intention to engage in a good-faith discussion concerning his representation. Hoskins's repeated jurisdictional objections and refusal to directly answer the court's questions undoubtedly frustrated the proceedings and made it difficult for the court to move forward. Nevertheless, the trial court had a duty to ensure Hoskins's right to counsel was either preserved or properly waived.

**{¶25}** Because no valid waiver appears on the record and Hoskins was allowed

to proceed unrepresented, his Sixth Amendment right to counsel was violated.

{¶26} Accordingly, Hoskins's first assignment of error is sustained, and we reverse the trial court's judgment on Counts 2 and 3 of the indictment, and remand the cause for further proceedings on these counts. Count 1 is barred from retrial for the reasons set forth below.

### B. Second Assignment of Error

{¶27} In his second assignment of error, Hoskins contends that the evidence was insufficient to support his conviction on Count 1 for carrying concealed weapons.

{¶28} "In reviewing a challenge to the sufficiency of the evidence, we must determine whether, 'after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Hinton*, 2025-Ohio-2249, ¶ 8 (1st Dist.), quoting *State v. Walker*, 2016-Ohio-8295, ¶ 12.

{¶29} Here, Hoskins's indictment charged him with a violation of R.C. 2923.12(A)(2). This statute provides that "[n]o person shall knowingly carry or have . . . a handgun *other* than a dangerous ordnance." (Emphasis added.)

{¶30} R.C. 2923.11(K)(6)(1) defines a "[d]angerous ordnance" as "[a]ny automatic . . . firearm." An "automatic firearm" is defined as "any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger." R.C. 2923.11(E).

{¶31} The handgun Hoskins was carrying had a "glock switch" that rendered it fully automatic. Therefore, because it was specially adapted to fire automatically, the handgun Hoskins possessed qualifies as a dangerous ordnance.

{¶32} The State argues that Hoskins's weapon is *both* a semiautomatic handgun and a dangerous ordnance. This argument is unpersuasive for several

reasons.

**{¶33}** First, this interpretation is inconsistent with the statutory scheme. Under R.C. 2923.11(E), once a firearm is "specially adapted to fire a succession of cartridges with a single function of the trigger," it qualifies as an automatic firearm. And R.C. 2923.11(K)(6)(1) expressly categorizes an automatic firearm as a dangerous ordnance.

**{¶34}** The statute does not support dual classification. A violation of R.C. 2923.12(A)(2) requires possessing a handgun *other than* a dangerous ordnance. (Emphasis added.) The phrase "other than" operates as an exclusion. If the weapon is a dangerous ordnance, it no longer qualifies as a "handgun" for purposes of conviction under (A)(2). The definitions in R.C. 2923.11 reinforce this distinction by placing automatic firearms squarely within the "dangerous ordnance" category, and not in the "handgun" category.

**{¶35}** To adopt the State's view would be to collapse the distinction the General Assembly made between subsections R.C. 2923.12(A)(2) and (A)(3), effectively allowing the State to charge under either provision regardless of whether a firearm meets the dangerous ordnance criteria. That approach would render the "other than a dangerous ordnance" language in (A)(2) meaningless, violating basic principles of statutory construction. *See State ex rel. Carna v. Teays Valley Local School Dist. Bd. of Edn.*, 131 Ohio St.3d 478, 483 (2012) (holding that courts must avoid interpretations that render any part of a statute meaningless or inoperative).

**{¶36}** Accordingly, because the weapon was modified in a manner that brought it within the definition of a dangerous ordnance, it no longer qualified under the definition required for conviction under R.C. 2923.12(A)(2).

**{¶37}** This court has previously reversed a conviction where the State indicted

a defendant under the wrong subsection of R.C. 2923.12. *State v. Robinson*, 2010-Ohio-543, ¶ 13 (1st Dist.). In *Robinson*, the State charged the defendant with violating R.C. 2923.12(A)(3), concealed carry of a dangerous ordnance. *Id.* However, the evidence established that the defendant possessed a handgun—i.e., a weapon falling under R.C. 2923.12(A)(2), not (A)(3). *Id.* at ¶ 15. Because the State failed to present evidence that the weapon was a dangerous ordnance, the conviction under (A)(3) was not supported by sufficient evidence. *Id.*

**{¶38}** Here, in the inverse, the State's evidence established that Hoskins's weapon *did* qualify as a "dangerous ordnance" because it had been specially adapted to fire automatically through the addition of a "glock switch." While this may have supported a charge under R.C. 2923.12(A)(3), the State did not indict or convict Hoskins under that subsection. Instead, the State charged Hoskins with violating R.C. 2923.12(A)(2), which requires proof that the firearm was a handgun *other* than a dangerous ordnance. Because the State failed to prove that essential element, the conviction under (A)(2) cannot stand.

**{¶39}** Therefore, we sustain Hoskins's second assignment of error, and reverse his conviction for carrying concealed weapons.

**{¶40}** Our reversal of Hoskins's conviction for insufficient evidence under Count 1 bars retrial on that count. *See City of Girard v. Giordano*, 2018-Ohio-5024, ¶ 10 ("[W]hen an appellate court reverses for insufficiency of the evidence, the Double Jeopardy Clause bars retrial.").

### *C. Third and Fourth Assignments of Error*

**{¶41}** In his third and fourth assignments of error, Hoskins argues that his convictions are against the manifest weight of the evidence and that the trial court failed to merge allied offenses.

**{¶42}** Because the first assignment of error is dispositive and requires us to reverse and remand Hoskins's convictions for Counts 2 and 3, the third and fourth assignments of error are moot, and we need not address them. *See State v. Jones,* 2024-Ohio-5501 ¶ 62 (1st Dist.) (reversing convictions based on ineffective assistance of counsel which rendered the manifest weight argument moot); *State v. Mathers,* 2002-Ohio-4117 ¶ 9 (2d Dist.) (where the record did not show a valid waiver of counsel, manifest weight and sentencing challenges rendered moot); *State v. Merrit,* 2021-Ohio-2847 ¶ 53 (5th Dist.) (where conviction was vacated due to insufficient evidence, merger argument was moot).

### *III. Conclusion*

**{¶43}** Because the State presented insufficient evidence to support Hoskins's conviction for carrying concealed weapons, we reverse that conviction and discharge him from further prosecution on that count. In addition, because the trial court failed to ensure that Hoskins knowingly and voluntarily waived his right to counsel, we reverse the remaining convictions and remand the cause for further proceedings consistent with this opinion.

Judgment accordingly.

**KINSLEY, P.J.,** and **MOORE, J.,** concur.