[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Seymour*, Slip Opinion No. 2026-Ohio-1249.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2026-OHIO-1249**

**THE STATE OF OHIO, APPELLANT, *v.* SEYMOUR, APPELLEE.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Seymour*, Slip Opinion No. 2026-Ohio-1249.]**

*Criminal law—Even if either R.C. 2903.04(A) (involuntary manslaughter) or R.C. 2925.02(A)(3) (corrupting another with drugs) requires but-for causation, the State need only prove that the death or serious physical harm would not have occurred absent the defendant's conduct; the State need not prove that the defendant's conduct alone would have caused death or serious physical harm, and the existence of other necessary causes does not negate but-for causation—Court of appeals' judgment reversed and trial court's judgment reinstated.*

(Nos. 2024-1658 and 2024-1732—Submitted November 18, 2025—Decided April 9, 2026.)

CERTIFIED by and APPEAL from the Court of Appeals for Franklin County, No. 22AP-721, 2024-Ohio-5179.

_____

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and FISCHER, DEWINE, BRUNNER, DETERS, and SHANAHAN, JJ., joined.

**HAWKINS, J.**

{¶ 1} When a defendant is charged with a crime for allegedly harming another person, the State must show that the defendant's actions were the cause of the harm. Part of this causation requirement involves determining whether the defendant's actions were an *actual cause* of the harm. To make that determination, judges and juries, lawyers, and law students typically use the but-for test—that is, they ask whether the harm would not have occurred but for the defendant's actions. Although the but-for test is typically applied, courts have sometimes employed an alternative test for causation, the substantial-factor test, in cases where multiple factors combined to produce a harm. The State argues here that it has established causation under either the traditional but-for test or under the substantial-factor test.

{¶ 2} This case involves an overdose death in which defendant-appellee, Carol A. Seymour, provided to the deceased only one of the drugs that contributed to his death. At a bench trial, Seymour was convicted of multiple felony offenses for providing heroin to the deceased. The Tenth District Court of Appeals reversed two of Seymour's convictions, concluding that the State had not introduced sufficient evidence to prove that the heroin supplied by Seymour was a but-for cause (i.e., actual cause) of the deceased's death. The State, in one of its propositions of law, now asks us to adopt the substantial-factor test in certain mixed-drug overdose cases. Under its other proposition of law, it argues that Seymour's conviction should be affirmed under the but-for causation test.

{¶ 3} We need not consider whether to adopt the substantial-factor test here. After viewing the evidence introduced at trial in a light most favorable to the prosecution, we conclude that sufficient evidence was introduced to prove that the heroin supplied by Seymour was a but-for cause of the decedent's death. We

therefore reverse the judgment of the Tenth District and reinstate the judgment of the trial court.

**Background**

{¶ 4} The decedent—who we refer to in this opinion as Adam—lived with his mother at a home in Grove City. Seymour was one of Adam's neighbors and was known in the community as a go-between who arranged drug deals for others in exchange for payment. One day in 2019, Adam asked Seymour to arrange for him to buy some heroin, so she drove him to a drug dealer's house and purchased $15 worth of heroin. Seymour gave that heroin to Adam and then drove him back to his house. Adam had a brief conversation with his mother upon returning home, and shortly thereafter, he went to his bedroom in the basement. Approximately one hour later, his mother went to check on him and discovered his lifeless body lying on the basement floor.

{¶ 5} A forensic pathologist performed an autopsy on Adam's body and concluded that Adam's cause of death was acute heroin, mitragynine, methylphenidate, and diphenhydramine intoxication. Mitragynine, commonly known as kratom, is an over-the-counter drug sometimes used by drug addicts to mitigate heroin-withdrawal symptoms. At very low doses, it acts as a stimulant, but it can have depressant, opioid-like effects when taken in higher doses. Methylphenidate, known by the brand names Ritalin or Focalin, is a prescription medication that is used to treat attention-deficit-and-hyperactivity disorder. Diphenhydramine, known by the brand name Benadryl, is an over-the-counter medication with sedative effects.

{¶ 6} For providing heroin to Adam, Seymour was charged with—and later convicted of—involuntary manslaughter, corrupting another with drugs, and trafficking in heroin.

{¶ 7} On appeal, Seymour challenged only her involuntary-manslaughter and corrupting-another-with-drugs convictions, arguing that the State had not

introduced evidence sufficient to prove beyond a reasonable doubt that her actions were an actual cause of Adam's death. 2024-Ohio-5179, ¶ 14 (10th Dist.). The Tenth District agreed and reversed those convictions, *id.* at ¶ 51, concluding that without "testimony that heroin was the 'but-for' cause of the decedent's overdose," there was insufficient evidence of actual cause, *id*. at ¶ 47. The appellate court determined that its judgment was in conflict with the Third District Court of Appeals' judgment in *State v. Carpenter*, 2019-Ohio-58 (3d Dist.). It therefore certified the following issue to this court for review:

> Whether there is sufficient evidence to support convictions for involuntary manslaughter under R.C. 2925.02(A)(3) and corrupting another with drugs under R.C. 2903.04(A) when the use of the controlled substance was a contributing, but not a "but-for," cause of the mixed-drug overdose death.[1]

2024-Ohio-5179 at ¶ 50 (10th Dist.).

{¶ 8} The State gave notice to this court of the Tenth District's entry certifying a conflict and also filed a discretionary appeal of the judgment, asserting two propositions of law:

> 1. The concepts of "cause . . . as a proximate result" in R.C. 2903.04(A) and "cause" in R.C. 2925.02(A)(3) do not require strict but-for causation but rather require proof that the defendant's conduct was a substantial or contributing factor in the death or serious physical harm.

---

1. The statutes referred to in the certified question are reversed—Seymour was convicted of involuntary manslaughter under R.C. 2903.04(A) and corrupting another with drugs under R.C. 2925.02(A)(3).

2. Even if either R.C. 2903.04(A) or R.C. 2925.02(A)(3) requires but-for causation, the State need only prove that the death or serious physical harm would not have occurred absent the defendant's conduct. The State need not prove that the defendant's conduct alone would have caused death or serious physical harm, and the existence of other necessary causes does not negate but-for causation.

(Ellipsis added by the State.)

{¶ 9} We determined that a conflict exists (case No. 2024-1658), accepted jurisdiction over the State's appeal on both propositions of law (case No. 2024-1732), and consolidated the cases. 2025-Ohio-598.

**Law and Analysis**

{¶ 10} The two crimes that Seymour was convicted of that she challenged on appeal require proof of causation. The involuntary-manslaughter statute states that "[n]o person shall cause the death of another . . . as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). The corrupting-another-with-drugs statute states that no person shall knowingly "administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person." R.C. 2925.02(A)(3).

{¶ 11} Causation is "a hybrid concept, consisting of two constituent parts: actual cause and legal cause," *Burrage v. United States*, 571 U.S. 204, 210 (2014). Actual cause—sometimes called factual cause, cause in fact, or but-for cause— means simply that "the former event caused the latter." *Paroline v. United States*, 572 U.S. 434, 444 (2014). We test actual cause with a straightforward counterfactual: we ask whether "the harm would not have occurred but for the defendant's act or failure to act." *Rieger v. Giant Eagle, Inc.*, 2019-Ohio-3745,

¶ 12. Legal cause, which is sometimes called proximate cause, *Burrage* at 210, "is typically explained in terms of foreseeability," *State v. Yerkey*, 2022-Ohio-4298, ¶ 45 (DeWine, J., dissenting), citing *Paroline* at 445. The murky boundaries of legal cause, "'often difficult of exact definition,'" *Strother v. Hutchinson*, 67 Ohio St.2d 282, 287 (1981), quoting *Clinger v. Duncan*, 166 Ohio St. 216, 222 (1957), are not in dispute in this case, so we need not address them here.

{¶ 12} We focus instead on actual cause. Consider the following hypothetical: A stabs B, killing B. We can clearly conclude that if A had not stabbed B, B would be alive. The same conclusion follows even if A's conduct combines with other forces to bring about B's death, as long as those other forces alone would not have killed B. Confusion arises, however, in cases—such as those with multiple independently sufficient causes of death—in which, strictly speaking, it cannot be said that A's conduct was a but-for cause of B's death.

{¶ 13} It is for this reason that some courts have departed from the but-for test as the sole means of determining actual cause. *See Burrage* at 214 (recognizing "the undoubted reality that courts have not *always* required strict but-for causality, even where criminal liability is at issue" [emphasis in original]); *see also Paroline* at 452 ("alternative and less demanding causal standards are necessary in certain circumstances to vindicate the law's purposes" because "[i]t would be anomalous to turn away a person harmed by the combined acts of many wrongdoers simply because none of those wrongdoers alone caused the harm"). One such departure from the but-for test is the substantial-factor test that the State asks us to apply here. Under that test, a criminal defendant's actions or inactions could be considered an actual cause of harm even if they were not a but-for cause of the harm, so long as they were a substantial factor in producing the harm. *See, e.g.*, *Carpenter*, 2019-Ohio-58, at ¶ 47, 52-54, 60, 64 (3d Dist.) (applying substantial-factor test to affirm a defendant's convictions for corrupting another with drugs and involuntary manslaughter in a case involving a mixed-drug overdose death). Thus, under the

State's theory, a finder of fact could find that Seymour was the actual cause of Adam's death if it concluded that the heroin she provided to Adam was a substantial factor in his overdose death.

{¶ 14} Despite the State's recommendation, we need not venture into the world of causal alternatives to resolve this case. Sufficient evidence was introduced for the finder of fact to conclude that Seymour's actions were a but-for cause of Adam's death.

{¶ 15} The Tenth District reversed Seymour's convictions under the sufficiency-of-the-evidence standard of review. Under that standard, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. McFarland*, 2020-Ohio-3343, ¶ 24 (plurality opinion), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other ground as stated in State v. Smith*, 1997-Ohio-355, ¶ 49, fn. 4. A court does "not ask whether the evidence should be believed but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at paragraph two of the syllabus.

{¶ 16} Most of the appellate court's analysis in this case was focused on the testimony of the pathologist who performed the autopsy. At Seymour's trial, that pathologist testified that the four drugs detected in Adam's body had a synergistic effect, meaning that they combined to make each other stronger. Adam stopped breathing, the pathologist explained, because the drugs combined to produce a suppressive effect on Adam's respiratory and circulatory systems. When he was asked whether he could single out one drug that was more responsible than the others, the pathologist said that he could not. Moreover, he said that he could not say whether Adam would have lived if he had not taken any one of the four drugs.

**{¶ 17}** The appellate court concluded that "the state ha[d] failed to demonstrate that heroin was the actual cause of the victim's death" because "no witness provided testimony that heroin was the 'but-for' cause of the decedent's overdose." 2024-Ohio-5179, at ¶ 47 (10th Dist.).

**{¶ 18}** In reaching that conclusion, however, the appellate court misapplied the sufficiency-of-the-evidence standard of review. Sufficiency-of-the-evidence review is not limited exclusively to testimony and other forms of direct evidence. *See State v. Dunn*, 2024-Ohio-5742, ¶ 28, 32. We regularly consider circumstantial evidence, which is "'sometimes defined as proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind,'" *State v. Roberts*, 2025-Ohio-5120, ¶ 140, quoting *State v. Griffin*, 13 Ohio App.3d 376, 377 (1st Dist. 1979), in sufficiency-of-the-evidence review. *See, e.g.*, *Dunn* at ¶ 35-37. We have also emphasized that "[c]ircumstantial evidence and direct evidence inherently possess the same probative value," *Jenks*, 61 Ohio St.3d at 272, and—in practice— "circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence," *State v. Jackson*, 57 Ohio St.3d 29, 38 (1991), citing *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330 (1960). Our precedent thus makes clear that an appellate court does not conduct proper sufficiency-of-the-evidence review if it turns a blind eye to circumstantial evidence in the record.

**{¶ 19}** Though there was no direct testimony that Adam would have lived if he had not taken the heroin, we see considerable circumstantial evidence in the record that indicates that the heroin caused Adam's overdose death. To be sure, the pathologist could not say with certainty which drug was the primary cause of Adam's death, nor could he say that Adam would have lived if he had not taken the heroin. But the pathologist did testify that it is "[e]xtremely rare" to die from a Benadryl overdose, that it is "very rare" to die from a Ritalin overdose, and that it is only "becoming more common" to die from a kratom overdose. He concluded

8

his testimony by affirming that in his experience, out of these four drugs, it was most common to see overdose deaths from heroin.

{¶ 20} Other expert testimony highlighted the severity of the effect of the heroin on Adam as compared to the other drugs in his system. A forensic toxicologist who reviewed and certified the toxicology report in this case testified that Adam's body contained a "non-toxic, normal, or therapeutic" amount of Benadryl, a "high therapeutic" amount of Ritalin,[2] a "high concentration" of kratom, and an amount of heroin that is "typical to see in a heroin-related death." The toxicologist estimated, "very conservatively," that Adam took the heroin within five hours of his death.

{¶ 21} Along with this expert testimony, we must consider the testimony of the lay witnesses regarding their personal knowledge of Adam's life and the details of the day he died. Adam was a long-term drug addict. He became addicted to OxyContin after a hernia surgery, and he progressed from there to heroin use. His mother, with whom he had always lived, observed on a firsthand basis Adam's struggle with addiction—including a previous near-lethal overdose. She testified, though, that in the months before his death, Adam enrolled in drug counseling and started Suboxone treatment. Adam's sister further testified that Adam had avoided heroin for two years prior to his death.

{¶ 22} Adam's mother testified that she could tell, based on Adam's experience with heroin use, when he was under the influence of heroin and when he was sober. She confirmed that in the months before his death, nothing indicated to her that Adam was using heroin. In fact, she testified that on the day of his death, she had spoken with him before he left with Seymour and after he returned home and that he had appeared fully sober. Yet approximately one hour after she observed him sober, Adam was dead.

---

2. The toxicologist interpreted the methylphenidate as Focalin rather than Ritalin. He explained that methylphenidate appears in a toxicology report when the person tested ingested Focalin or Ritalin.

{¶ 23} And the scene of Adam's death showed what he was doing during that hour. When Adam's mother discovered Adam's body, she called 9-1-1. When law enforcement arrived, they noticed heroin and drug paraphernalia near Adam's body. Specifically, they found a syringe, a plate with a spoon and a straw, aluminum foil that was rolled up into the shape of a pipe, and a small plastic baggie. Residue found inside the baggie was later determined to be heroin.

{¶ 24} Evidence also suggested that Adam took the other, less dangerous drugs found in his system with some regularity. Adam's text-message logs were introduced at trial, and they indicated that Adam's mother had been regularly providing Adam with kratom. Those logs also revealed that Adam sought Focalin[3] from his mother on multiple occasions and suggested that he regularly used Benadryl to help him sleep. Compared to his apparently regular use of these drugs, the evidence indicated that prior to his death, Adam had avoided heroin for years.

{¶ 25} Any rational trier of fact could—viewing this evidence in a light most favorable to the prosecution—readily conclude that but for Adam's taking the heroin on the day of his overdose, he would not have died. Heroin was the most dangerous of the four drugs Adam took, and the evidence overwhelmingly suggested that it was responsible for his overdose. Specifically, the evidence showed that Adam, whose body had tolerated the other less dangerous drugs for some time, ingested heroin, a drug that he had avoided for years, and was dead within an hour.

{¶ 26} Sufficiency-of-the-evidence review is not an exercise in scientific certainty. Though the pathologist who performed the autopsy declined to speculate whether the heroin given to Adam by Seymour was a but-for cause of Adam's death, the appellate court was still required to review *all* the evidence admitted at trial and determine whether that evidence, when viewed in a light most favorable to the

---

3. Adam called the drug Focalin rather than Ritalin. As noted above, Focalin and Ritalin are similar methylphenidate-based drugs used for similar purposes.

prosecution, could prove to a rational trier of fact the essential elements of the crimes beyond a reasonable doubt, *McFarland*, 2020-Ohio-3343, at ¶ 24, citing *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. Applying this standard of review, we have no difficulty concluding that the State brought forth sufficient evidence to prove that the heroin provided by Seymour was a but-for cause of Adam's death.

{¶ 27} We adopt the State's second proposition of law—which is, we note, an accurate explanation of the application of the but-for test. And because the but-for test ably resolves this case, we determine that the State's first proposition of law was improvidently accepted, so we decline to address it. Moreover, because we conclude that Seymour's actions satisfy the but-for test, we hold that the conflict between the Tenth District's judgment in this case and the Third District's judgment in *State v. Carpenter*, 2019-Ohio-58 (3d Dist.), was improvidently certified.

### Conclusion

{¶ 28} We reverse the judgment of the Tenth District Court of Appeals and reinstate the trial court's judgment.

Judgment reversed<br>and trial court's judgment reinstated.

_____

Shayla D. Favor, Franklin County Prosecuting Attorney, and Seth L. Gilbert, Assistant Prosecuting Attorney, for appellant.

Mitchell A. Williams, Franklin County Public Defender, and George M. Schumann, Assistant Public Defender, for appellee.

Dave Yost, Attorney General, Mathura J. Sridharan, Solicitor General, and Jana M. Bosch, Deputy Solicitor General, urging reversal for amicus curiae Ohio Attorney General Dave Yost.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kristen L. Hatcher and Chauncey Keller, Assistant Prosecuting Attorneys, urging reversal for amicus curiae Ohio Prosecuting Attorneys Association.

Elizabeth R. Miller, Ohio Public Defender, and Russell Patterson, Assistant Public Defender, urging affirmance for amicus curiae Ohio Public Defender.

_____