[Cite as *State v. Patterson*, 2026-Ohio-1768.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                                :

    Plaintiff-Appellee,               :

    v.                                         :

BRAYLIN PATTERSON,                      :

    Defendant-Appellant.           :

No. 115294

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 14, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-694538-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Luke Habermehl, Assistant Prosecuting Attorney, *for appellee.*

Susan J. Moran and Michael T. Fisher, *for appellant.*

KATHLEEN ANN KEOUGH, J.:

{¶ 1} In this delayed appeal, defendant-appellant Braylin Patterson appeals his conviction for unlawful possession of a dangerous ordnance. Finding no merit to the appeal, we affirm his conviction.

## I. Factual and Procedural History

{¶ 2} In August 2024, the State charged Patterson and his codefendant in a five-count indictment.[1] Relative to Patterson, he was charged with two counts — carrying a concealed weapon, pursuant to R.C. 2923.12(A)(2), a felony of the fourth degree, and unlawful possession of dangerous ordnance, pursuant to R.C. 2923.17(A), a felony of the fifth degree. Both counts included a forfeiture specification for the weapon, but the dangerous ordnance charge included a six-year firearm specification because the weapon was an automatic firearm. *See* R.C. 2941.144(A). Patterson waived his right to a jury, and the following evidence was presented at a bench trial.

### A. Bench Trial

{¶ 3} On August 10, 2024, Cleveland Police Officers John McCartney and Elaina Ciacchi responded to a call for a suspected stolen vehicle and juveniles with firearms trespassing at a vacant house. When they arrived, officers saw a white vehicle abruptly leaving and another car parked in the driveway, as well as several "young individuals." Officer Ciacchi testified that she observed an individual wearing all black clothing walk up the driveway, but then the individual took off running as she and her partner approached.

{¶ 4} Relevant to the appeal, Officer McCartney testified that he activated his body camera as he and his partner approached a driveway where a gray sedan

---

[1] The State charged Patterson's codefendant with improperly handling firearms in a motor vehicle, carrying a concealed weapon, and possessing a defaced firearm.

was parked, facing the street.  He stated that an individual, identified as Patterson, exited the passenger side of that vehicle, and his codefendant exited the driver's side of the vehicle.

{¶ 5} The following facts are taken from Officer McCartney's testimony and his body-camera video that the State played at trial.  As officers approached, Patterson walked away from them but turned around when Officer Ciacchi asked him a question.  Officer McCartney approached Patterson and asked if he had anything his person; Patterson twice responded "no."  Officer McCartney then placed Patterson in handcuffs and searched him.  During the search, Officer McCartney discovered an object and when he asked Patterson about it, Patterson twice responded that it was "nothing."  Once Officer McCartney discovered the firearm, he stated to his partner that Patterson had a "Glock on him."  The officer removed from Patterson's waistband a tan Glock firearm with an attached extended magazine.  The firearm also had a purple-colored, shiny, metallic piece affixed to the back end of the firearm.

{¶ 6} After securing the firearm by removing the magazine and ejecting the live round from the firearm, Officer McCartney radioed that the "Glock has a switch on it." During this time, Patterson did not make any statements about the discovery or inquire what a "switch" meant.  Moreover, when Officer McCartney asked him his age, Patterson said, "17" — it was later learned that Patterson was 18 years old.

{¶ 7} Officer McCartney described the firearm as a tan Glock 19X (the "Glock 19X") with an extended 30-round magazine and a shiny, purple-colored

"automatic function" or "switch" attached. According to the officer, the switch converted the firearm from a semiautomatic weapon, which fired one shot per trigger pull, to an automatic weapon, which discharged multiple bullets with a single trigger pull. He stated that the switch was relatively small, about an inch.

{¶ 8} Eric Sanchez, a Cleveland Police Detective with the Crime Gun Intelligence Center, performed a test fire of the Glock 19X and prepared a report. He testified that the Glock 19X had a "machine gun conversion device" attached to the back, which made the gun fully automatic with one trigger pull. Detective Sanchez also stated that there were 34 live rounds in the extended magazine attached to the firearm when it was recovered. Based on his testing of the Glock 19X, he determined that it was operable and functioned as an automatic weapon. The court observed exhibit No. 8 — a video of Detective Sanchez test-firing the automatic function of the Glock 19X. According to Detective Sanchez, the switch was "very noticeable" because it was on the back of the firearm, it "sticks out," and it is a different color than the firearm. (Tr. 94.)

{¶ 9} Detective John Hudelson testified that he contacted the firearm's registered owner, who was not Patterson. He stated that the owner told him that the firearm was stolen approximately one year ago, but that he did not report it stolen. Neither the State nor the defense asked Detective Hudelson any questions about whether the owner disclosed or described certain characteristics of the firearm at the time it was stolen. Detective Hudelson further stated on cross-examination that he was unable to determine when Patterson received the firearm

or whether Patterson knew the firearm had been converted into an automatic weapon. He also testified that he did not ask the arresting officers if Patterson made any statements about the firearm, including whether Patterson actually knew the switch was present.

## B. The Verdict and Sentence

{¶ 10} The trial court found Patterson guilty on all charges and specifications. The court ordered the six-year firearm specification to be served prior to and consecutively to a six-month sentence on the base offense of unlawful possession of a dangerous ordnance in Count 2. It also ordered a six-month sentence on Count 1, carrying a concealed weapon, to run concurrently to the sentence in Count 2. Finally, the court ordered the Glock 19X forfeited.

## II. The Appeal

{¶ 11} Patterson raises three assignments of error for our review.

## A. Defective Indictment

{¶ 12} Count 2 of the indictment charged Patterson with unlawful possession of dangerous ordnance, in violation of R.C. 2923.17(A). The indictment alleged that Patterson "did knowingly acquire, have, carry, or use any dangerous ordnance, to wit: a firearm."

{¶ 13} In his first assignment of error, Patterson contends that the indictment was defective because the unlawful-possession-of-a-dangerous-ordnance charge lacked an essential element and thus was invalid. Specifically, he contends that the indictment merely alleged that he possessed a "firearm," rather

than an "automatic firearm." According to Patterson, the nature of the firearm is an essential element of the offense and the absence of the qualifying adjective of "automatic" is fatal to the State's charging instrument. We disagree.

{¶ 14} First, Patterson has waived any argument regarding any deficiency in the indictment by not moving to dismiss the indictment as defective pursuant to Crim.R. 12 or moving to dismiss the charges on this basis during trial. The "failure to timely object to a defect in an indictment constitutes a waiver of the error." *State v. Horner*, 2010-Ohio-3830, ¶ 46, citing Crim.R. 12(C)(2). Crim.R. 12(C)(2) mandates that "[d]efenses and objections based on defects in the indictment" must generally be raised "[p]rior to" trial. Accordingly, we review for plain error, which will only be recognized in exceptional circumstances to avoid a miscarriage of justice. *Horner* at *id.*, citing *State v. Frazier*, 73 Ohio St.3d 323 (1995); Crim.R. 52(B).

{¶ 15} The purpose of an indictment is to provide the accused with adequate notice of the charge and to enable the accused to protect himself from future prosecution for the same event. *State v. Buehner*, 2006-Ohio-4707, ¶ 7. A criminal indictment is sufficient when it provides a defendant with notice of all the elements of the offense with which the defendant is charged. Crim.R. 7. "Generally, the requirements of an indictment may be met by reciting the language of the criminal statute." *State v. Childs*, 88 Ohio St.3d 194, 199 (2000), citing *State v. Murphy*, 65 Ohio St.3d 554, 583 (1992).

{¶ 16} The Ohio Supreme Court has recognized two criteria by which the sufficiency of an indictment is to be determined: (1) "'whether the indictment 'contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet,'" and, (2) "'in case any other proceedings are taken against him for a similar offence [sic], whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.'" *Frazier* at 332, quoting *Russell v. United States*, 369 U.S. 749, 763-764 (1962).

{¶ 17} Patterson has not alleged that he did not have adequate notice of the charges against him or that he was misled or prejudiced by the State's failure to aver in the base offense that the "dangerous ordnance" was an "automatic firearm." Rather, based on our review of the indictment, we find that it tracked the statutory definition of the offense charged. Moreover, the six-year firearm specification attendant to the base offense specified that the Patterson "had a firearm that is an automatic firearm . . . on or about his person or under his control while committing the offense." Accordingly, we find that the record supports that Patterson was sufficiently apprised of the charges against him, and he has not demonstrated that the indictment was defective or that he was denied due process. We find no plain error and overrule his first assignment of error.

**B. Sufficiency of the Evidence**

{¶ 18} Patterson contends in his second assignment of error that his convictions are based on insufficient evidence and should be reversed because the

convictions violate the Fourteenth Amendment to the United States Constitution, and Article I, Section 10 of the Constitution of the State of Ohio. Specifically, he claims that the evidence did not establish that he knew the Glock 19X was a "dangerous ordnance." He raises no argument challenging his conviction for carrying a concealed weapon.[2]

{¶ 19} Where a party challenges the sufficiency of the evidence supporting a conviction, a reviewing court determines whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997). An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. McFarland*, 2020-Ohio-3343, ¶ 24, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Under a sufficiency inquiry, an appellate court does "not ask whether the evidence should be believed, but, rather, whether the evidence, 'if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Pountney*, 2018-Ohio-22, ¶ 19, quoting *Jenks* at *id*.

{¶ 20} Recently, the Supreme Court of Ohio reviewed the sufficiency-of-the-evidence standard of review in *State v. Seymour*, 2026-Ohio-1249, ¶ 15. The court reminded reviewing courts that an improper sufficiency-of-the-evidence review

---

[2] We note that throughout trial, Patterson did not contest Count 1. In fact, during closing argument, his counsel admitted that Patterson, because he was under the age of 21, unlawfully possessed a concealed weapon.

occurs "if it turns a blind eye to circumstantial evidence in the record" because "[s]ufficiency-of-the-evidence review is not limited exclusively to testimony and other forms of direct evidence." *Id.* at ¶ 18, citing *State v. Dunn*, 2024-Ohio-5742, ¶ 28, 32.

> We regularly consider circumstantial evidence, which is sometimes defined as proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in accordance with the common experience of mankind in sufficiency-of-the-evidence review. We have also emphasized that [c]ircumstantial evidence and direct evidence inherently possess the same probative value, and — in practice — circumstantial evidence may be more certain, satisfying, and persuasive than direct evidence.

(Cleaned up.) *Id.* at ¶ 18.

{¶ 21} R.C. 2923.17(A) provides that "no person shall knowingly acquire, have, carry, or use a dangerous ordnance." A "dangerous ordnance" is defined, in relevant part, as an "automatic firearm." R.C. 2923.11(K)(1). In this case, the switch affixed to the rear of the slide on the Glock 19X converted the firearm into an automatic firearm, which is defined as any firearm "designed or specially adapted to fire a succession of cartridges with a single function of the trigger." R.C. 2923.11(E).

{¶ 22} Patterson contends that the State did not provide sufficient evidence to establish the mens rea element of the offense — that he *knew* the firearm was rendered "automatic" by the addition of a switch device. In support, he relies on the relatively small size of the switch, suggesting that the size and his young age would make it difficult for him to identify. Additionally, he contends that because he did

not make any statements about the firearm, the court could not make any reasonable inferences about his state of mind or intent.

{¶ 23} Pursuant to R.C. 2901.22(B):

A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶ 24} "Whether a defendant acts knowingly can only be determined, absent a defendant's admission, from all the surrounding facts and circumstances, including doing the act itself." *State v. Gross*, 2019-Ohio-5304, ¶ 14 (5th Dist.).

{¶ 25} In *State v. Jordan*, 89 Ohio St.3d 488 (2000), the Ohio Supreme Court, when discussing the mens rea for unlawful possession of a dangerous ordnance, found that the State "must prove that the defendant knew or [was] aware of the probability that the item in his possession is dangerous." *Id*. at 494. However, "the definition of 'knowingly' . . . does not require the [S]tate to show that a defendant knew the *specific* characteristics of the item possessed that made it a dangerous ordnance." (Emphasis in original.) *Id*. at 494. "[I]f the accused did not know for certain that the item in his possession was [a] dangerous ordnance, the [S]tate can still show culpability by objective demonstrations of the defendant's mental state." *Id*. at 495 (stating that permissible inferences can be gleaned from the facts).

{¶ 26} It is undisputed that Officer McCartney removed from Patterson's pants the Glock 19X with an extended 30-round magazine. It is also undisputed that the firearm was tan in color and had a purple-colored, metallic "switch" on the slide of the firearm. Accordingly, it is undisputed that Patterson had actual possession of the Glock 19X that contained both an extended 30-round magazine and the switch — the presence of the switch allowed the user of firearm to expel all 34 live rounds with a single pull of the trigger.

{¶ 27} The evidence showed that when Officer McCartney approached Patterson and asked if he had anything on his person, Patterson twice responded "no." Even after the officer discovered the Glock 19X in Patterson's waistband, he asked him what it was and Patterson twice responded it was "nothing." The officer then removed the firearm, stated that Patterson had a Glock on his person, and then radioed that the "Glock has a switch on it." During these statements, Patterson did not make any statements about the discovery, nor did he inquire what a "switch" meant. Based on the body-camera video, Officer McCartney did not hesitate in his discovery of the switch; it was readily identifiable.

{¶ 28} Moreover, as the State highlights, the Glock 19X was loaded, meaning that an individual had to have physically chambered the bullet into the firearm, which would have required the person to have manipulated the slide of the gun where the purple-colored switch was attached.

{¶ 29} Based on the fact that the loaded, tan firearm with an extended magazine containing 34 live rounds was discovered in Patterson's waistband, and

the switch affixed to the firearm was metallic and purple, a reasonable trier of fact could make permissible inferences based on direct and circumstantial evidence that Patterson had knowledge that the Glock 19X was an automatic weapon and thus a dangerous ordnance. Viewing the evidence in favor of the State, sufficient evidence supports Patterson's conviction, and his second assignment of error is overruled.

### C. Manifest Weight of the Evidence

{¶ 30} In his third assignment of error, Patterson contends that his convictions are against the manifest weight of the evidence in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Ohio Constitution.

{¶ 31} "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. . . . Weight is not a question of mathematics, but depends on its effect in inducing belief.'" (Emphasis omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 12, quoting *Thompkins*, 78 Ohio St.3d at 387.

{¶ 32} "'When considering whether a judgment is against the manifest weight of the evidence in a bench trial, an appellate court will not reverse a conviction where the trial court could reasonably conclude from substantial evidence that the [S]tate has proved the offense beyond a reasonable doubt.'" *State v. Worship*, 2022-Ohio-52, ¶ 34 (12th Dist.), quoting *State v. Tranovich*, 2009-Ohio-2338, ¶ 7 (12th Dist.). To warrant reversal from a bench trial under a manifest-weight-of-the-evidence claim, this court must determine that "'the trial court clearly

lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered.'" *State v. Crenshaw*, 2020-Ohio-4922, ¶ 23 (8th Dist.), quoting *State v. Bell*, 2019-Ohio-340, ¶ 41. "A conviction should be reversed as against the manifest weight of the evidence only in the most 'exceptional case in which evidence weighs heavily against the conviction.'" *Id.*, quoting *Thompkins* at 387; *see also State v. Brown*, 2025-Ohio-2804, ¶ 30-31 (reiterating the *Thompkins* manifest-weight standard of review).

{¶ 33} Patterson raises the same arguments that he raised in challenging the sufficiency of the evidence — that the State did not produce any evidence to support that he *knowingly* possessed an automatic firearm. He continues to focus on the size of the switch and the State's lack of evidence proving his familiarity and experience with guns or this particular firearm.

{¶ 34} Again, the State did not need to establish that Patterson knew the specific characteristics of the item possessed that made it a dangerous ordnance. *Jordan*, 89 Ohio St.3d at 494. In *Jordan*, the Ohio Supreme Court concluded that the State did not need to prove that the defendant knew the shotgun barrel was less than 18 inches in length — the attribute that elevated the shotgun to a dangerous ordnance. The *Jordan* Court cautioned, however, that in some situations, "where a defendant, in good faith, has no way of determining that the item in his possession is dangerous or hazardous, he or she should not be subject to prosecution . . . . Entirely innocent conduct should not be punishable." *Id.* at 495. This concern is not applicable in this case.

{¶ 35} Sitting as the thirteenth juror and assessing credibility, we note that Patterson was not truthful with Officer McCartney. First, he denied having anything on his person when initially asked. Additionally, after the officer discovered the presence of a firearm, Patterson told him it was "nothing." Finally, when Officer McCartney asked Patterson his age after discovering the Glock 19X, he stated he was 17 years old. Moreover, we further note that when Officer McCartney radioed that the Glock had a "switch" on it, Patterson did not express any surprise, confusion, or ask about its presence.

{¶ 36} As previously discussed, based on the color of the firearm compared to the switch, the presence of an extended magazine and 34 live rounds, the fact that the firearm was loaded, and that the firearm was discovered in Patterson's waistband, we find that it was reasonable for the court to infer that Patterson had knowledge, or was aware of the probability, that the firearm in his possession was a dangerous ordnance.

{¶ 37} Patterson raises a new theory or argument on appeal — the State did not elicit any testimony whether the switch was already attached to the firearm when it was stolen. According to Patterson, because the owner did not report it stolen, it was likely that it already contained the switch. Notwithstanding the new theory or argument advanced on appeal, the State did not need to prove that Patterson himself added the switch to the firearm. Accordingly, whether the firearm was already modified with the switch when it was stolen from the owner is irrelevant.

**{¶ 38}** Based on the foregoing, we find that Patterson has not demonstrated that this is the exceptional case requiring this court to step in as the "thirteenth juror," reverse his conviction for possession of dangerous ordnance, and order a new trial. We do not find that the trier of fact clearly lost its way and created such a manifest miscarriage of justice, requiring reversal. The third assignment of error is overruled.

**{¶ 39}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

---

KATHLEEN ANN KEOUGH, JUDGE

ANITA LASTER MAYS, J., CONCURS;
EMANUELLA D. GROVES, P.J., CONCURS IN PART AND DISSENTS IN PART
(WITH SEPARATE OPINION)

EMANUELLA D. GROVES, P.J., DISSENTING IN PART AND CONCURRING IN PART:

{¶ 40} I fully concur with the majority's resolution of the first assignment of error but write separately because I disagree with the resolution of the second assignment of error. I would find there was insufficient evidence to support the conviction. Additionally, I would find that the conviction was not supported by the manifest weight of the evidence.[3]

{¶ 41} In order to obtain a conviction for the crime of unlawful possession of a dangerous ordnance, the State needed to show that the defendant did knowingly acquire, have, carry or use any dangerous ordnance pursuant to R.C. 2923.17(A).

{¶ 42} The Ohio Supreme Court expressly addressed this issue in *State v. Jordan*, 89 Ohio St.3d 488, 489 (2000). There the court asked whether "the state is required to prove that a defendant knows of the specific characteristics of the weapon or item possessed that brings it within the statutory definition of dangerous ordnance." *Id.* The Court held that the mens rea of "knowingly" applied to the words

---

[3] Patterson only challenged his conviction for possession of a dangerous ordnance. He was also convicted under R.C. 2923.12(A)(2), which prohibits an accused from knowingly carrying or having a handgun *"other than a dangerous ordnance"* concealed on his person or ready at hand. (Emphasis added.). The trial court simultaneously found Patterson guilty of carrying a concealed weapon pursuant to R.C. 2923.12(A)(2), which applies to a firearm that is not a dangerous ordnance, and unlawful possession of a dangerous ordnance pursuant to R.C. 2923.17(A) for the same weapon. *See State v. Hoskins*, 2026-Ohio-100, ¶ 34 (1st Dist.) ("If the weapon is a dangerous ordnance, it no longer qualifies as a 'handgun' for purposes of conviction under [2923.12](A)(2).").

While R.C. 2923.12(A)(3) governs carrying a concealed dangerous ordnance, neither the State nor the trial court sought to amend the indictment, and the trial court explicitly found Patterson guilty of R.C. 2923.12(A)(2).

"dangerous ordnance," because to find otherwise would create strict liability. *Id.* at 493. The Ohio Supreme Court found that strict liability was not the legislature's intent. *Id.* at 493. The State must prove under R.C. 2923.17(A) "that a defendant [knew] or [was] aware of the probability that the item in his possession [was] dangerous." *Id.* at 494-495.

> In determining the element of "knowledge," the trier of fact can rely on "permissible inferences of knowledge, based at least in part upon fact." *Jordan*, 89 Ohio St.3d at 495. Thus, even "if the accused did not know for certain that the item in his possession was dangerous ordnance, the state can still show culpability by objective demonstrations of the defendant's mental state." *Id.*

*State v. Hackl*, 2009-Ohio-2929, ¶ 11 (6th Dist.).

{¶ 43} There is little case law currently in Ohio that addresses a violation of R.C. 2923.17(A) when the weapon is a firearm modified with a switch. In most of the cases, the dangerous ordnance was a sawed-off shot gun. Additionally, the defendants either pleaded guilty to the charge or their appeal did not challenge the knowledge element. Albeit these cases are informative.

{¶ 44} The common element in this line of case law is (1) the weapon was obviously modified and (2) the person in possession of the weapon had some knowledge of the modification. *See State v. Durham*, 2001 Ohio App. LEXIS 2754, at *4 (2d Dist. June 22, 2001) (Defendant admitted that he owned and altered a sawed-off shotgun and only challenged the search of his residence.); *State v. Spencer*, 2011-Ohio-3820, ¶ 23 (10th Dist.) (Evidence was sufficient to support a finding that appellant knowingly possessed a sawed-off shotgun where testimony

established that he owned, collected, and worked on firearms in his home and the sawed-off shotgun was found in his bedroom closet.); *State v. Barksdale*, 2001 Ohio App. LEXIS 2808, at *12 (11th Dist. June 22, 2001) (Evidence was sufficient for a conviction under R.C. 2923.17 where the defendant admitted to purchasing the weapon, had ammunition for the weapon on his person, and described the weapon to police.).

{¶ 45} *Hackl* provides additional insight.  There, the defendant was found with several items that appeared innocuous when considered individually.  The State presented a witness who explained how the items could be used to make a bomb and that he had only seen the "multiplicity" of items in the defendant's possession in a bomb range.  The court found that based on the witness's testimony "it was reasonable for the trial court to infer that appellant had knowledge, or was aware of the probability, that the items in his vehicle were dangerous." *Id.* at ¶ 16.

{¶ 46} While an admission is certainly not necessary to convict a party under the dangerous ordnance statute, more is needed than simple possession.  In the instant case, there is simply not enough evidence in the record to gauge Patterson's state of mind.  The majority relies on evidence of Patterson's silence in response to questions, despite his right to remain silent.  Nonetheless, I would not find that his silence translates into his knowledge that he possessed a dangerous ordnance.

{¶ 47} For the foregoing reasons, I would reverse the conviction for unlawful possession of a dangerous ordnance.